|  | FOR PUBLICATION |
|---|---|

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
In re                                                       :     Chapter 11
                                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                    :     Case No. 08-13555 (JMP)
                                                            :
            Debtors.                                        :     (Jointly Administered)
                                                            :
                                                            :
------------------------------------------------------------x
                                                            :
In re                                                       :     Chapter 11
                                                            :
LEHMAN COMMERCIAL PAPER, INC.,                              :     Case No. 08-13900 (JMP)
                                                            :
            Debtors.                                        :
                                                            :
------------------------------------------------------------x
                                                            :
LH 1440 L.L.C.                                              :
            Plaintiff,                                      :
            v.                                              :
LEHMAN COMMERCIAL PAPER, INC.,                              :     Adv. Proc. No.
LEHMAN BROTHERS HOLDINGS, INC., and                         :     09-01138 (JMP)
STATE STREET BANK AND TRUST                                 :
COMPANY,                                                    :
            Defendants.                                     :
------------------------------------------------------------x


**MEMORANDUM DECISION GRANTING MOTION TO DISMISS OF STATE
STREET BANK AND TRUST COMPANY**


WEIL, GOTSHAL & MANGES LLP
Attorneys for Debtors and Debtors in Possession
767 Fifth Avenue
New York, New York 10153

      Howard B. Comet, Esq.

MARK L. LUBELSKY AND ASSOCIATES

Attorneys for Plaintiff LH 1440 L.L.C.
123 West 18th Street
New York, New York 10011

    Mark L. Lubelsky, Esq.

BINGHAM McCUTCHEN LLP
Attorneys for Defendant State Street Bank and Trust Company
One Federal Street
Boston, Massachusetts 02110

    Evan J. Benanti, Esq.
    Eric Heining, Esq.
    Andrew C. Phelan, Esq.
    Sabin Willett, Esq.

**JAMES M. PECK**
**UNITED STATES BANKRUPTCY JUDGE**

*Introduction*

This dispute involves one of the loans held by State Street Bank and Trust Company ("State Street") that is part of a pool of commercial loans transferred pursuant to the terms of a master repurchase agreement (the "MRA"). Under the MRA, State Street paid approximately $1 billion to purchase this portfolio of financial assets from Lehman Brothers Commercial Paper, Inc. ("LCPI"). The transaction evidenced by the MRA contemplated that LCPI would repurchase these assets and repay State Street in accordance with the agreement, but LCPI filed for relief under chapter 11 and has defaulted under the MRA. The result is that State Street now owns these assets, including the loan in question made to LH 1440 LLC ("LH 1440") as borrower.

Plaintiff LH 1440 complains that the transfer of this loan to State Street adversely impacted its rights under other contemporaneous loan documentation. In substance, LH 1440 contends that it entered into three integrated loans that were intended to function as

2

a unified financing package for the acquisition and improvement of certain commercial real estate. It claims that its expectations have been frustrated due to the sale of only one of these loans to State Street under the terms of the MRA. The splitting up of the financing and the selection of one loan for inclusion in the pool of loans sold to State Street allegedly has exposed Plaintiff to the risk of a mortgage foreclosure action at a time when it is unable to obtain advances needed to support the project under the remaining loans still held by LCPI. Plaintiff argues that State Street, as purchaser of this pool of assets, should be placed in the shoes of the original lender and be required to advance funds to LH 1440 even though financing documents for these other loans were not included within the pool of assets acquired by State Street.

As it relates to State Street, the issues presented lead to an examination of the applicable loan documentation with respect to the project and of the rights and obligations of a non-defaulting counterparty under a repurchase agreement. State Street contends that in exercising its rights upon the occurrence of a default under the MRA, it cannot be forced to fulfill the role of lender in relation to another loan that was not expressly designated and made a part of the pool of assets. Accordingly, State Street has brought a motion to dismiss the complaint (the "Motion") for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 (b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). Lehman Brothers Holdings, Inc. ("LBHI") and LCPI join in the Motion on the basis of unambiguous language providing that there were three separate loans, each of which was individually transferable. LBHI and LCPI assert that given this language, the loan in question was properly transferred to State Street pursuant to the MRA.

As discussed below, the Motion is granted as to State Street and denied as to LBHI and LCPI, but LH 1440 shall be allowed to amend its complaint.

*Background*

On June 8, 2007, LH 1440, as borrower, and LBHI, as lender, entered into real estate financing arrangements documented by means of two separate loan agreements, the Acquisition and Project Loan Agreement and the Building Loan Agreement. In addition, the parties executed a Consolidated, Amended and Restated Acquisition Loan Mortgage and Security Agreement, and an Option Agreement referencing three loans: 1) the Acquisition Loan of $15,649,568.31; 2) the Project Loan of $6,232,323.69; and 3) the Building Loan of $4,875,819.00. The loans were secured by three separate promissory notes. A single Participation Fee of 28.5% and a single Interest Rate Cap of $26,757,711.00 applied to the loans.

The Acquisition Loan was used to acquire certain real property located at 1440 Story Avenue in the Bronx, New York. The Project and Building Loans have been used to maintain and improve the acquired property and to fund interest payments on the Acquisition Loan. The Acquisition Loan is fully funded, and the Project and Building Loans have future funding obligations. Thus, the holder of the Acquisition Loan is under no direct obligation to advance funds to LH 1440. At some point, LCPI acquired the above referenced loans from LBHI.

On May 1, 2007, State Street entered into the MRA with LCPI, and as evidenced by a July 2007 confirmation letter, purchased a pool of commercial loans for $1 billion. Pursuant to the MRA, LCPI was entitled to substitute loans, as long as the value of those

assets, in the aggregate, exceeded $1 billion. On September 17, 2008, State Street gave LCPI a notice of default under the MRA. When LCPI failed to repurchase the loans, State Street took possession of the mortgages and promissory notes for those assets. At that time, the promissory note for the Acquisition Loan was one of thirty-six commercial loans within the pool of assets held by State Street, but the promissory notes for the Project Loan and the Building Loan were not included among those assets.

On March 31, 2009, LH 1440 filed this adversary proceeding[1] to obtain a declaratory judgment that the loan agreements together constitute an integrated loan to LH 1440 and that State Street necessarily acquired the Acquisition Loan, Project Loan, and Building Loan when it exercised its rights as counterparty under the MRA and took possession of the commercial loans described in the MRA. Thereafter, on May 1, 2009, State Street filed the Motion based on the failure to state a claim upon which relief may be granted. LBHI and LCPI have joined in the Motion. Following oral argument, the Court reserved judgment.

---

[1] Originally, LH1440 had sought to intervene as a party in a separate adversary proceeding [Case No. 08-01743, ECF Doc. # 31] between State Street as plaintiff and LCPI as defendant relating to the same pool of assets. The Court denied the motion to intervene. [ECF Doc. # 54]. Subsequently, State Street and LCPI entered into a stipulation and order signed by this Court on February 20, 2009 stipulating that State Street assumed the Acquisition Loan as of September 17, 2008. In addition, the stipulation and order reserved the rights of LH 1440 to pursue its claims against LCPI and State Street. The adversary proceeding brought by State Street is still pending. In that proceeding, State Street alleges, among other things, that an additional thirty-seventh loan should be included in the pool of assets subject to the MRA.

*Discussion*

Rule 12(b)(6) of the Federal Rules of Civil Procedure has been made applicable to adversary proceedings by Bankruptcy Rule 7012(b). In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000). However, in order to survive a challenge to the adequacy of a complaint under Rule 12(b)(6), the factual allegations in a complaint cannot be supported by mere conclusory statements. *Twombly*, 550 U.S. at 555. Rather, these allegations must be sufficient "to raise a right to relief above the speculative level," and provide more than a "formulaic recitation of the elements of a cause of action." *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950. Therefore, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).

Consideration of the Motion necessarily leads to a review of the complaint within the commercial context of sophisticated real estate lending and the related transactions that take place routinely in the repo market. This calls for an understanding of the functioning of repurchase agreements. As Collier explains, "a repurchase agreement is an agreement by a bank or dealer in securities to transfer securities to a counterparty against a transfer of funds by the counterparty to the bank or dealer, with a simultaneous agreement by the parties for the counterparty to retransfer the securities to the bank or

6

dealer at a future time against a transfer of funds by the bank or dealer to the counterparty." 1 COLLIER ON BANKRUPTCY ¶101.47 (15th Ed. Rev.). "Repo transactions are used in the marketing and trading of debt securities, including federal, state and municipal government obligations. They enable parties to invest available revenues in income generating instruments on a short-term basis. The recovery of investments in these transactions, in a timely fashion, is essential to the smooth functioning of these markets." 3 COLLIER ON BANKRUPTCY ¶362.05[7] (15th Ed. Rev.).

Repo agreements, such as the MRA, are essential sources of market liquidity and have become important components of a smoothly running financial system. The designation of those assets that are being transferred to a counterparty in consideration for the transfer of funds is a basic element of every repo agreement. The repo market is a vital and vibrant source of liquidity for the financial system as a whole. Cash and financial assets are exchanged between financial institutions in the ordinary course of business based on standard documentation with the understanding that the assets being sold are otherwise unrestricted and may be converted to cash without the overhang and delay of litigation risk. This is a market that is fueled by the unfettered transferability of financial assets.

It is undisputed that in connection with the financing granted to LH 1440 and the subsequent transfer of identified financial assets pursuant to the MRA, State Street as transferee acquired only the promissory note for the Acquisition Loan, and not the promissory notes attached to the Project Loan or Building Loan. This note transfer to State Street was proper, because the transfer provisions, along with the splitting clause in each of the loan agreements, establish that each of the loans was individually

7

transferable. There is, as a result, a disconnect between what the documentation expressly allows and the allegations of LH 1440 as to what it understood or expected when it entered into the underlying loan transactions.

Separate transfers plainly are authorized under the applicable documentation. Section 13 of the Consolidated, Amended and Restated Acquisition Loan Promissory Note states unambiguously that the lender may at any time assign or otherwise transfer its right to payment of principal, interest or any other right or benefit under the Note. Importantly, the Acquisition Loan has its own promissory note and is individually transferable. This right to liberally assign and transfer the loans separately is without restriction and is not conditioned upon or tied in any way to the transfer of any other loans.

Each loan agreement has its own transfer provision that gives a great deal of flexibility and discretion to the lender to transfer the loans in whole or in part. The Acquisition and Project Loan Agreement and the Building Loan Agreement provide in section 18.1 that the lender may, at any time, sell, transfer or assign any of the loan documents and any or all related servicing rights. Section 7.4 of the Acquisition and Project Loan Agreement also gives the lender the ability to split or divide the indebtedness into two or more separate notes or agreements. Accordingly, even if all three loans were deemed to be one loan, pursuant to this provision, that single loan could be split under section 7.4, and then transferred under section 18.1.

Given the express language in the loan documents allowing for splitting and free transferability of the loans, LH 1440 is unable to state a claim upon which relief may be

8

granted as to State Street.  State Street paid one billion dollars in exchange for a pool of specified assets that, for all practical purposes, functioned in the same manner as collateral for a secured one billion dollar loan.  By entering into such a conventional repurchase agreement (albeit for a significant sum), State Street did not thereby agree to take on exposure to funding obligations that attach to assets that were never designated to be included in the pool.

As to State Street, no facts have been alleged to support LH 1440's claim that a counterparty to a repurchase agreement that is in the process of attempting to recover value from a pool of acquired assets after a default somehow can be forced to assume funding obligations associated with another closely related loan that never was part of the underlying pool of assets.  State Street's rights and obligations as counterparty are set forth in the MRA and related documents governing the commercial relationship between the seller, LCPI, and the purchaser, State Street, of a defined set of assets.  As purchaser of a pool of specified assets, State Street cannot have any legally binding and enforceable obligations in relation to another asset that was not subject to the transaction documents and that was left behind with the seller.  A purchaser cannot have liabilities with respect to an asset that it neither purchased nor agreed to purchase.

The only conceivable exceptions to this general proposition would be those situations in which the purchaser of assets under a repurchase agreement was on notice of an ongoing funding obligation, a restriction or some other condition impacting the right of a seller to freely transfer a particular asset.  The Court believes that a purchaser under a repurchase agreement should be treated in a manner comparable to a good faith purchaser for value.  A repo counterparty should not be exposed to adverse claims by a third party

9

with respect to any asset subject to a repurchase agreement unless there are circumstances sufficient to place a reasonable market participant on actual notice or inquiry notice regarding liabilities or infirmities that might attach to such asset.

The complaint fails to allege that State Street had actual notice that the three loans made to LH 1440 were interrelated and may not have been separable when it purchased the Acquisition Loan. Therefore, it becomes necessary to examine whether the circumstances alleged were sufficient to place State Street on inquiry notice, such that it was required to make further inquiries.

In the Second Circuit, the test for determining whether a party is placed on inquiry notice is objective. *See In re Bayou Group, LLC*, 396 B.R. 810, 848 (Bankr. S.D.N.Y. 2008); *In re Integrated Res. Real Estate Ltd. P'ships Secs. Litig.*, 815 F. Supp. 620, 637 (S.D.N.Y. 1993). Whether a party is deemed to be on inquiry notice depends on whether the facts known by that party would induce a reasonable actor in a similar position to investigate the matter further. *See Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 89 F. App'x. 287 (2d Cir. 2004) (discussing inquiry notice in the context of a securities fraud case). Parties on inquiry notice who do not make diligent inquiry are charged with knowledge of the facts they would have learned upon making such inquiry. *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983). However, nothing has been alleged in the complaint to indicate that State Street knew or had any reason to suspect that there were other allegedly related loans between LBHI and LH

1440 that could not be separated from the Acquisition Loan, or that State Street as counterparty had any duty to inquire further with respect to any loan within the pool.[2]

Although LH 1440 may have reasonably believed that it was entering into a single financing arrangement, State Street, as a counterparty to the MRA, would be indifferent to the expectations of the parties at the time of origination with respect to a particular loan within a diverse pool of assets. In the ordinary course of an efficient market involving sophisticated financial institutions, counterparties such as State Street would not be expected to undertake a detailed investigation with respect to the underwriting of the Acquisition Loan Note or the authority of the seller, here LCPI, to freely transfer that Note. The smooth functioning of the financing markets depends upon easy execution of transactions such as the MRA. The market is structured to foster the orderly and prompt exchange of dollars and financial assets between market participants. Restrictions on transfer of financial assets or the existence of undisclosed and perhaps unknowable incremental liabilities would interfere with that model and make it both more cumbersome and more costly to obtain access to needed short term financing.

The Court concludes that it would be inconsistent with customary market practices to expect the counterparty in a repo transaction to conduct a time consuming investigation regarding the assets that are included in the transaction. This is particularly true in consideration of the fact that other assets often can be substituted, and the focus of the transaction is on the aggregate value of the assets, rather than the specific assets

---

[2] The complaint implies, but fails to specifically allege, that State Street knew or should have known of the link between the three loans and the possibility that they may not be separable. While the complaint alleges that State Street acquired all three loans, and that State Street may not choose the rights and remedies that it prefers, it does not state that State Street knew about the interrelation of the three loans or that State Street had any obligation to investigate further based on the knowledge that it had.

11

within the pool. LH 1440 has not alleged that State Street as repo counterparty had any reason to know about or a duty to discover the alleged connection between the Acquisition Loan Note and other instruments executed by LH 1440 and LBHI. The complaint as to State Street seeks a remedy from a party that owes no duty to LH 1440 and fails to state a claim that rises above the speculative level. For that reason, the Motion is granted as to State Street, but LH 1440 shall be granted the opportunity to reformulate its allegations in an amended complaint.

The Motion is denied as to LBHI and LCPI. While the transfer provisions and the splitting clause establish that the loans were separately transferable, the underlying documents indicate that the transaction appears to have been intended to function as an interrelated loan. The loans were to be used in tandem; the Acquisition Loan, now fully funded, provided funds to purchase the property, while the Project and Building Loans, with ongoing funding obligations, would allow the borrower to maintain and improve the acquired property. The single Participation Fee and the single Interest Rate Cap Agreement also may be indicative of a single loan transaction.

LH 1440 has alleged that the loans are tied together and should be given the opportunity to move beyond the pleading stage and take discovery that may help clarify the role of LBHI in originating the loan and the proper characterization of the loan. Pending the completion of discovery, it is unclear whether the transactions between LBHI and LH 1440 may or may not have constituted an integrated transaction and what the parties actually intended.

One thing does seem clear, however. LH 1440 claims to have suffered as a

consequence of the transfer of one of its promissory notes to State Street and now is exposed to unanticipated transactional risks.  LH 1440 should have an opportunity to develop its thesis that the loan should not have been split to its detriment and to explore facts in support of its claims relating to the structuring of the financing by LBHI.

For the reasons stated, the Motion is granted as to State Street and denied as to LBHI and LCPI, provided, however, that consistent with this decision, LH 1440 is granted leave to file an amended complaint against the defendants within twenty days from the date of entry of this Memorandum Decision and Order.

SO ORDERED.

Dated: New York, New York           */s/ James M. Peck*_____
       September 25, 2009           HONORABLE JAMES M. PECK
                                    United States Bankruptcy Judge