**UNITED STATES BANKRUPTCY COURT**  **NOT FOR PUBLICATION**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                    :
**In re**                                                           :   **Chapter 11**
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                        :   Case No. 08-13555 (JMP)
                                                                    :
              Debtors.                                              :   (Jointly Administered)
                                                                    :
-------------------------------------------------------------------x
                                                                    :
**In re**                                                           :   **Chapter 11**
                                                                    :
**LEHMAN COMMERCIAL PAPER, INC.,**                                  :   Case No. 08-13900 (JMP)
                                                                    :
              Debtors.                                              :
                                                                    :
-------------------------------------------------------------------x
                                                                    :
**LH 1440 L.L.C.**                                                  :
                                                                    :
              Plaintiff,                                            :
                                                                    :
              v.                                                    :   Adv. Proc. No.
                                                                    :
**LEHMAN COMMERCIAL PAPER, INC.,**                                  :   09-01138 (JMP)
**LEHMAN BROTHERS HOLDINGS, INC.,** and                             :
**STATE STREET BANK AND TRUST**                                     :
**COMPANY,**                                                        :
                                                                    :
              Defendants.                                           :
                                                                    :
-------------------------------------------------------------------x

**MEMORANDUM DECISION GRANTING**
**MOTION TO DISMISS AMENDED COMPLAINT**

MARK L. LUBELSKY AND ASSOCIATES
*Attorneys for Plaintiff LH 1440 L.L.C.*
123 West 18th Street
Eighth Floor
New York, New York 10011

    Mark L. Lubelsky, Esq.

BINGHAM McCUTCHEN LLP
*Attorneys for State Street Bank and Trust Company*
One Federal Street
Boston, Massachusetts 02110

    Andrew C. Phelan, Esq.

James M. Peck
United States Bankruptcy Judge

## *Introduction*

The original complaint of LH 1440 LLC ("LH 1440") against State Street Bank and Trust Company ("State Street") was dismissed for reasons set forth in *LH 1440 L.L.C. v. Lehman Commer. Paper, Inc.* (*In re Lehman Bros. Holdings, Inc.*), 416 B.R. 392, 399 (Bankr. S.D.N.Y. 2009) ("*LH 1440 I*"). Familiarity with this earlier decision is assumed.

LH 1440 persists in its attempt to hold State Street responsible as transferee of one fully funded loan under a master repurchase agreement for unfulfilled funding obligations associated with related loans that it did not purchase. In response to the pleading deficiencies identified in *LH 1440 I*, LH 1440 has filed an amended complaint[1] that is the subject of a renewed motion to dismiss by State Street. The current dispute, thus, covers familiar subject matter that was addressed at length by the Court in *LH 1440 I*. The Amended Complaint fails to cure the deficiencies of the original pleading and will be dismissed, this time without leave to further amend.

---

[1] See Amended Adversary Complaint, dated October 5, 2009 (Docket No. 24) (hereinafter, the "Amended Complaint").

2

Again the question presented is whether State Street, as purchaser of a single fully-funded loan acquired under the terms of a master repurchase agreement, can be found liable for the obligation to advance funds to LH 1440 under two related loans that were left behind with Lehman Commercial Paper, Inc. and not purchased by State Street.[2] In *LH 1440 I*, the Court determined that: 1) the three loans - the Acquisition Loan, Project Loan, and Building Loan - were separate loans and not sub-parts of a single, indivisible loan; and 2) the relevant Loan Documents permitted the three loans to be separately split and transferred.[3] *Id.* at 397. Accordingly, the Court concluded that State Street acquired "only the promissory note for the Acquisition Loan, and not the promissory notes attached to the Project Loan or Building Loan." *Id.* at 396-97. In its initial complaint, LH 1440 failed to support its claim that State Street could "be forced to assume funding obligations associated with" loans it does not own. *Id.* at 397. LH 1440 was granted leave to amend its complaint to overcome the "disconnect between what the documentation expressly allows and the allegations of LH 1440 as to what it understood or expected when it entered into the underlying loan transactions." *Id.*

---

[2] In *LH 1440 I*, the financing is described as follows:

> On June 8, 2007, LH 1440, as borrower, and LBHI, as lender, entered into real estate financing arrangements documented by means of two separate loan agreements, the Acquisition and Project Loan Agreement and the Building Loan Agreement. In addition, the parties executed a Consolidated, Amended and Restated Acquisition Loan Mortgage and Security Agreement, and an Option Agreement referencing three loans: 1) the Acquisition Loan of $ 15,649,568.31; 2) the Project Loan of $ 6,232,323.69; and 3) the Building Loan of $ 4,875,819.00.
>
> * * *
>
> The Acquisition Loan was used to acquire certain real property located at 1440 Story Avenue in the Bronx, New York. … The Acquisition Loan is fully funded, and the Project and Building Loans have future funding obligations. Thus, the holder of the Acquisition Loan is under no direct obligation to advance funds to LH 1440. At some point, Lehman Commercial Paper, Inc. ("LCPI") acquired the above referenced loans from LBHI.

416 B.R. at 395.

[3] The relevant documents to this dispute are all exhibits attached to the Amended Complaint (collectively, the "Loan Documents"). For clarity, references to specific Loan Documents are by the title of the Loan Document: Thus, Am. Compl. Ex. A is the "Acquisition and Project Loan Agreement;" Ex. B is the "Building Loan Agreement;" Ex. C is the Consolidated, Amended and Restated Acquisition Loan Mortgage and Security Agreement (the "Acquisition Loan Security Agreement"); Ex. F is the "Option Agreement;" Ex. G is the "Memorandum of Option Agreement;" and Ex. I is the Consolidated, Amended And Restated Acquisition Loan Promissory Note (the "Acquisition Loan Promissory Note").

3

The Amended Complaint enhances LH 1440's initial allegations as to State Street's actual, constructive, or inquiry notice that the three loans were interrelated and inseparable so that State Street should be deemed to have acquired more than it actually bargained for – a single loan consisting of the Acquisition Loan, Building Loan and Project Loan. These amended allegations remain insufficient, however, and are contradicted by the terms of the Loan Documents. The Amended Complaint is dismissed for failing to state a claim upon which relief may be granted against State Street.

*Legal Standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedure is made applicable to adversary proceedings by Bankruptcy Rule 7012(b). In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000). In addition to the complaint itself, the Court may also consider "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). In order to survive a challenge to the adequacy of a complaint under Rule 12(b)(6), the factual allegations in a complaint cannot be supported by mere conclusory statements. *Twombly*, 550 U.S. at 555. The allegations must be sufficient "to raise a right to relief above the speculative level," and provide more than a "formulaic recitation of the elements of a cause of action." *Id.* In instances "[w]here a plaintiff's conclusory allegations are clearly contradicted by documentary evidence incorporated into the pleadings … the court is not required to accept them." *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 528 (S.D.N.Y. 2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950.

4

*Discussion*

*Count I*

Count I of the Amended Complaint seeks a declaratory judgment that State Street acquired a single loan consisting of the Acquisition Loan, Project Loan, and Building Loan. Am. Compl. ¶ 116. LH 1440 supports its allegations by relying solely on the terms of the governing agreements, but these allegations are at odds with applicable provisions of the Loan Documents.

The Court already has found that State Street purchased "only the promissory note for the Acquisition Loan and not the promissory notes attached to the Project Loan or Building Loan." 416 B.R. at 396-97. This "was proper, because the transfer provisions, along with the splitting clause in each of the loan agreements, establish that each of the loans was individually transferable." *Id.* at 397. As explained in *LH 1440 I*:

> Separate transfers plainly are authorized under the applicable documentation. Section 13 of the Consolidated, Amended and Restated Acquisition Loan Promissory Note states unambiguously that the lender may at any time assign or otherwise transfer its right to payment of principal, interest or any other right or benefit under the Note. Importantly, the Acquisition Loan has its own promissory note and is individually transferable. This right to liberally assign and transfer the loans separately is without restriction and is not conditioned upon or tied in any way to the transfer of any other loans.

*Id.* Such transferability of the loans is further supported by section 21(d) of the Acquisition Loan Promissory Note which also grants the lender the right to "sell, assign, transfer or convey, by pledge or otherwise, this Note or any replacement notes and all or any portion of Lender's interest therein or in the Acquisition Loan evidenced hereby to third parties."

The Loan Agreements also permitted the unrestricted and separate transfer of the Acquisition Loan. As discussed in *LH 1440 I*:

> Each loan agreement has its own transfer provision that gives a great deal of flexibility and discretion to the lender to transfer the loans in whole or in part. The Acquisition and Project Loan Agreement and the Building Loan Agreement provide in section 18.1 that the lender may, at any time, sell, transfer or assign

5

> any of the loan documents and any or all related servicing rights. Section 7.4 of the Acquisition and Project Loan Agreement also gives the lender the ability to split or divide the indebtedness into two or more separate notes or agreements. ***Accordingly, even if all three loans were deemed to be one loan, pursuant to this provision, that single loan could be split under section 7.4, and then transferred under section 18.1.***

*Id.* (emphasis added). LH 1440 endeavors to overcome this ability to freely transfer the loans by relying on formulaic allegations that State Street was on notice that the loans were interrelated and inseparable. But such allegations, considered more fully below, are insufficient because they disregard the contractual right to individually transfer the Acquisition Loan.

*Alleged Notice of Interrelatedness and Inseparability*

LH 1440 repeatedly alleges that certain contract terms should have placed State Street on notice that the three loans were interrelated and inseparable. Am. Compl. ¶¶ 54-72, 84-102. For example, LH 1440 alleges that because the Acquisition Loan Promissory Note defined "Loan Agreement" as "that certain Acquisition and Project Loan Agreement dated of even date…" State Street was or should have been on notice that the "Acquisition Loan [P]romissory [N]ote did not stand alone and was interrelated with and not separable from the project loan." *Id.* ¶¶ 63, 65, 67. LH 1440 makes additional notice arguments based on other references in the Loan Documents and general practice in the real estate financing industry. *Id.* ¶¶ 69-72, 84-102. However, these general references to the collective Loan Documents fail to state any special circumstances that would put a counterparty to a repurchase agreement such as State Street on notice that the loan in question could not be freely transferred. Indeed, the opposite was true, and further diligence would have revealed that each loan in this financing package may have been related from the perspective of the borrower but nonetheless was separately assignable. The allegations of relatedness and inseparability are insufficient to state viable claims against State Street.

6

*Use of the Term "Loan" in the Singular*
*Form Does Not Mean the Loans Were Inseparable*

LH 1440 asserts that it received a single loan based on contract language that describes the overall financing in the singular form. *Id.* ¶¶ 73-77. It then alleges that this put State Street on notice that the Acquisition Loan Promissory Note was inseparable or not individually transferable. *Id.* ¶¶ 78-80. This strained reading of the Loan Documents does not take into account other language contained in the Loan Documents specifying that LH 1440 received three separate loans and that each such loan was individually transferable. The Acquisition and Project Loan Agreement includes three separate whereas clauses that describe the loans made to LH 1440: an Acquisition Loan for $15,649,568, a Building Loan for $4,875,819, and a Project Loan for $6,232,323.69. Acquisition and Project Loan Agreement at 1-2. It then provides that the term "Loan" refers to the loans "[c]ollectively and individually, as the context may require." *Id*. at 8. Thus, the use of the singular form of the term "Loan" in the drafting of the documents extends to both the singular and the plural and does not influence the interpretation of the Loan Documents or support the allegation that LH 1440 entered into a single, indivisible loan.

Regardless of the usage of singular or plural defined terms, the contractual provisions, read in context, contemplate the ability to separately transfer each of the multiple loans, thereby demonstrating that the Loan Documents, fairly read, are intended to deal with multiple loans. *See LH 1440 I*, 416 B.R. at 397.

*The Option Agreement and Memorandum of Option Agreement*

LH 1440 alleges that language used in the Option Agreement and the Memorandum of Option Agreement demonstrates that only a single loan exists. Am. Compl. ¶¶ 32, 40-44. LH 1440 argues that the definition of "Loan" in these ancillary documents transformed the three loans into a single loan, but this argument fails for the reasons previously stated. LH 1440

7

alleges it received a single loan because the Option Agreement provides LBHI "agreed to make **a loan** in the maximum principal sum of $26,757,711.00 [or so much thereof as may be advanced ('Loan').]" *Id.* ¶ 40 (emphasis in Amended Complaint) (quoting Option Agreement, Recital G). The use of the singular form of "Loan" and reference to the aggregate amount borrowed does not contradict specific language in the Loan Documents detailing that LH 1440 entered into three loans. The argument is tautological given that the "Loan" referenced in the Option Agreement was made "pursuant to the Acquisition and Project Loan Agreement and Building Loan Agreement." Option Agreement, Recital G.

References to the Memorandum of Option Agreement are unpersuasive because that document by its terms "is not intended to, and does not and shall not, amend, modify, diminish or affect in any way the Option Agreement or the Loan Agreement or the construction or interpretation thereof." Mem. of Option Agreement ¶ 3. Thus, even if the Memorandum of Option Agreement described a single indivisible loan, the actual Loan Documents control and establish that there were three loans, each being individually severable and transferable.

*The Participation Fee and Interest Rate Cap*

LH 1440 also relies on provisions surrounding a Participation Fee and Interest Rate Cap to support its theory that the loan is a unified whole. *Id.* ¶¶ 44-53 (Participation Fee), 23-27 (Interest Rate Cap). The Participation Fee provides that the lender, subject to certain limitations, is entitled to 28.5% of the proceeds of various transactions concerning the property owned by LH 1440, such as sales or ground leases. Acquisition and Project Loan Agreement § 26.1. LH 1440 contends that if there were three separate loans each loan would have its own Participation Fee resulting in the payment of three 28.5% payments (for a total of 85.5%) in the event of transactions affecting the property. LH 1440 argues that such an unreasonable result allegedly supports its assertion that a single loan existed. Am. Compl. ¶¶ 46, 53. The terms of the contract

8

make it clear, however, that the Participation Fee is not calculated on per-loan basis, but rather is based on revenues generated from the operation of the overall project and is "subject to the 'waterfall' of payments" in section 5.20 of the Acquisition and Project Loan Agreement. The waterfall provisions refer to a single Participation Fee in relation to the borrowing of an aggregate of $26.7 million, under three loans, and the amount advanced is subject to a Participation Fee of 28.5% of proceeds generated by the entire property. When scrutinized, the Participation Fee does not support the assertion by LH 1440 that a single loan exists.

In a similar vein, LH 1440 refers to the existence of a single Interest Rate Cap Agreement, rather than multiple such agreements, as further proof that the financing amounted to one integrated and indivisible loan. *Id.* ¶¶ 23-27. However, the contract language requiring LH 1440 to obtain a single Interest Rate Cap Agreement "which shall be conterminous with the Loan and have a notional amount which shall not be less than $26,757,711.00" references the three loans and does not plausibly support the argument that the separate loans are in actuality one loan. *See* Acquisition and Project Loan Agreement § 6.13(a). As noted earlier, the Loan Documents use the singular term "Loan" to encompass the loans "[c]ollectively and individually, *as the context may require*." Acquisition And Project Loan Agreement at 8 (emphasis added). The context makes clear that the three loans are being referred to collectively, and the existence of a single Interest Rate Cap does not advance the argument that the three loans constituted one loan.

*Count II*

Count II reiterates the claim that various Loan Documents put State Street on notice that the three loans were inseparable and non-transferable and seeks a declaratory judgment that State Street "should not be treated in a manner comparable to a good faith purchaser for value or a holder in due course . . . and that *plaintiff have any and all defenses and causes of action*

9

*available to it as if defendant State Street acquired the acquisition loan, the project loan, and the building loan.*" Am. Compl. ¶ 119(vi) (emphasis added). This count does not set forth any plausible grounds for finding that State Street, as a counterparty to a repurchase agreement, had notice of LH 1440's currently articulated contentions regarding transferability of the loans. Accordingly, for the same reasons noted earlier in this decision and in *LH 1440 I*, Count II fails to state a claim upon which relief may be granted as to State Street and is dismissed.

*Count III*

Count III seeks a declaratory judgment that State Street acquired a single loan consisting of the Acquisition Loan, Building Loan and Project Loan based on its ownership of the Acquisition Loan Security Agreement.[4]  Am. Compl. ¶ 122. LH 1440 claims that the Acquisition Loan Security Agreement consolidated the Acquisition Loan, Building Loan, and Project Loan into a single loan by referring to them collectively as the "Loan." *Id.* ¶¶ 109-111. However, use of this defined term in that agreement does not amount to a consolidation, may not be properly interpreted as overriding other provisions that authorize separate transfers of the component parts of any of the loans and does not make State Street responsible for liabilities and obligations associated with the Building Loan or Project Loan. Therefore, Count III is dismissed for failing to state a claim upon which relief can be granted.

*Count IV*

Count IV seeks a permanent injunction enjoining State Street from enforcing its rights and remedies under the Acquisition and Project Loan Agreement, the Acquisition Loan Promissory Note, or the Acquisition Loan Security Agreement. Am. Compl. ¶ 130. LH 1440 has no right to injunctive relief under the circumstances presented, and this count is dismissed.

---

[4] The mortgage securing the Acquisition Loan is titled the Consolidated, Amended and Restated Acquisition Loan Mortgage and Security Agreement. The consolidation in question relates to a prior mortgage on the property of $2.9 million and a gap mortgage of $12.9 million. Acquisition Loan Security Agreement, Recitals at 1.

10

*Conclusion*

For the reasons stated, State Street's motion to dismiss is granted and the Amended Complaint is dismissed as to State Street.

SO ORDERED.

Dated: New York, New York  　　　　　　　　　　 */s/ James M. Peck*
　　　　July 21, 2010  　　　　　　　　　　　　　　 Honorable James M. Peck
　　　　　　　　　　　　　　　　　　　　　　　　　 United States Bankruptcy Judge